# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM GROHS,<br>      Plaintiff,<br><br>v.<br><br>KELLY SMITH GROHS,<br>      Defendant. | No. 3:17-cv-01605 (SRU) |

## ORDER REMANDING CASE

Kelly Smith Grohs removed her family court case to this court after the Connecticut Superior Court awarded sole custody of her children to her former husband, William Grohs. *See* Pet. Removal, Doc. No. 1. After examining the petition for removal, I conclude that the case was improperly removed, and that any claims stated in Ms. Grohs' petition would be barred by the *Rooker-Feldman* doctrine and the domestic relations exception to subject-matter jurisdiction. Therefore, I order Ms. Grohs' case remanded to Connecticut Superior Court.

### I.   Standard of Review

Pursuant to the federal removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Thus, whether a civil action may be removed from state court turns on whether "the district court has original jurisdiction," *Aetna Health v. Kirshner*, 415 F. Supp. 2d 109, 112 (D. Conn. 2006), as determined "by looking to the complaint as it existed at the time the petition for removal was filed." *Moscovitch v. Danbury Hosp.*, 25 F. Supp. 2d 74, 79 (D. Conn. 1998).

"The burden of establishing the existence of federal subject matter jurisdiction rests on the removing party," *Kirshner*, 415 F. Supp. at 112, and "courts may raise jurisdictional defects in removal cases *sua sponte*." *Stark v. Tyron*, 171 F. Supp. 3d 35, 39 (D. Conn. 2016) (citing *Barbara v. N.Y. Stock Exch.*, 99 F.3d 49, 53 (2d Cir. 1996)). "If it appears before final judgment that a case was not properly removed, because it was not within the original jurisdiction of the United States district courts, the district court must remand it to the state court from which it was removed." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 8 (1983).

## II.     Background

Kelly Smith Grohs and William J. Grohs were divorced on July 26, 2011. *See* Judgment of Dissolution, *Grohs v. Grohs*, No. UWY-FA10-4022991-S, Doc. No. 169.00 (Conn. Super. Ct. July 26, 2011). In connection with their divorce, they entered into a Parenting Agreement that was "attached []to and made a part []of" the Dissolution of Marriage Settlement Agreement.[1] *See* Ex. L to Pet. Removal, Doc. No. 1-11, at 3. Ms. Grohs alleges that Mr. Grohs subsequently violated the terms of the Parenting Agreement and conspired with judges of the Connecticut Superior Court to obtain sole custody of the children. *See* Pet. Removal, Doc. No. 1, at 5–6.

On September 25, 2017, after the Superior Court awarded sole custody of the children to Mr. Grohs, Ms. Grohs removed the family court action to this court under 28 U.S.C. §§ 1441(a) & 1443. She asserts a slew of bases for federal jurisdiction, including 18 U.S.C. §§ 228 (the Child Support and Recovery Act) and 1346 (the Child Abuse Prevention and Treatment Act); 28 U.S.C. §§ 1331 (Federal question jurisdiction), 1361 (Action to compel an officer of the United States to perform his duty), 1391 (Venue), 1491 (the Tucker Act), 1651 (the All Writs Act),

---

[1] The terms of the Parenting Agreement are not apparent from the Petition for Removal, because Ms. Grohs did not attach it. *See generally* Pet. Removal, Doc. No. 1.

2

1738A (Full faith and credit given to child custody determinations), & 2283 (the Anti-Injunction Act); 29 U.S.C. § 701 (the Rehabilitation Act); 42 U.S.C. §§ 1983 (the Civil Rights Act of 1866), 12133, & 12188 (the Americans with Disabilities Act); Federal Rules of Civil Procedure 5.1, 15, & 65; the First, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Fourteenth, and Nineteenth Amendments to the United States Constitution; and Article I, Section 10, Clause 1, Article IV, Section 2, Clause 1, and Article VI of the United States Constitution. In addition, Ms. Grohs has moved to proceed *in forma pauperis* and to appoint counsel. *See* Docs. 2 & 3.

On October 6, 2017, Mr. Grohs appeared through counsel and moved to remand the case to state court on grounds of untimely removal and lack of subject-matter jurisdiction under the domestic relations exception or the *Rooker-Feldman* doctrine. *See* Mot. Remand, Doc. No. 10; Mem. Supp. Mot. Remand, Doc. No. 11. He also seeks attorneys' fees and costs incurred as a result of the removal. Ms. Grohs filed several motions in response, *see* Docs. Nos. 13–20, including, on October 13, 2017, an objection to Mr. Grohs' motion to remand. *See* Doc. No. 18.

### III. Discussion

Because allegations by *pro se* parties are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), I am "required to read [Ms. Grohs'] *pro se* submissions liberally." *See Newman & Cahn, LLP v. Sharp*, 288 F. Supp. 2d 115, 116 (E.D.N.Y. 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)). Even affording Ms. Grohs' "*pro se* petition for removal the close and sympathetic reading to which it is entitled," however, I conclude that "it reveals no basis for the exercise of subject matter jurisdiction over the underlying suit." *See Vill. of Milbrook v. Forrest*, 903 F. Supp. 599, 600 (S.D.N.Y. 1995). For the reasons set forth below, I grand Mr. Grohs' motion to remand, and order that the case be remanded to Connecticut Superior Court.

A. <u>Removal</u>

Ms. Grohs asserts two statutory bases for removal of the case from state court: (1) section 1441(a), removal on the basis of federal question jurisdiction; and (2) section 1443, removal on the basis of civil rights violations. Neither statute entitles her to remove the case to this court.

1. *Section 1441(a)*

Section 1441(a) permits removal of "civil action[s] . . . of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Thus, "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Because there is no diversity of citizenship,[2] the only basis for original jurisdiction over the parties is if Ms. Grohs' claims "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

"In determining whether a petition establishes the existence of a federal question, removal based on federal question jurisdiction is improper unless a federal claim appears on the face of a well-pleaded complaint." *Four Keys Leasing & Maintenance Corp. v. Simithis*, 849 F.2d 770, 773 (2d Cir. 1988). "Allegations made for the first time in a removal petition . . . cannot support the removal of a case on federal question grounds." *Id.* Rather, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 10–11 (1983). A defendant such as Ms. Grohs "cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law." *See Williams*, 482 U.S. at 399.

---

[2] The filings in the state court action indicate that both Mr. Grohs and Ms. Grohs are residents of Watertown, Connecticut. *See, e.g.*, Ex. A to Pet. Removal, Doc. No. 1-1, at 2; Ex. L to Pet. Removal, Doc. No. 1-11, at 2.

4

The instant case plainly does not "fall[] within the original 'federal question' jurisdiction of the United States district courts." *See Franchise Tax Bd.*, 463 U.S. at 8. First, the "face of the complaint" does not reveal a substantial federal question. *See Williams*, 482 U.S. at 399. Insofar as can be discerned from Ms. Grohs' attachments and the public docket, Mr. Grohs' lawsuit "appears to be no more than an ordinary matrimonial controversy" that does not involve any federal claims. *See Dillard v. Family Court*, 404 F.2d 404, 405 (2d Cir. 1968) (per curiam). Indeed, Ms. Grohs' petition for removal does not contend that Mr. Grohs' "'statement of his own cause of action shows that it is based' on federal law." *See Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010) (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009)). Instead, she argues that the conduct of Mr. Grohs, his attorneys, and the state judges violated her rights under the Americans with Disabilities Act, the Due Process Clause of the Fourteenth Amendment, and other federal statutory and constitutional provisions. *See* Pet. Removal, Doc. No. 1, at 4–10.

Whether construed as a defense to Mr. Grohs' lawsuit, a counterclaim against Mr. Grohs, or a third-party complaint against Mr. Grohs' attorneys and the state judges, Ms. Grohs' allegations "cannot serve as the basis for 'arising under' jurisdiction." *See Holmes Grp. v. Vornado Air Circulation Sys.*, 535 U.S. 826, 831 (2002) (counterclaims); *see also, e.g.*, *Franchise Tax Bd.*, 463 U.S. at 14 (defenses); *Palisades Collections v. Shorts*, 552 F.3d 327, 332 (4th Cir. 2008) (third-party complaints). Hence, removal was improper under section 1441.

2. *Section 1443*

Section 1443 provides in pertinent part:

> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

> (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof . . . .

28 U.S.C. § 1443(1). In short, the statute "permits removal by a defendant whose petition recites facts that would be sufficient, if true, to permit the federal court to infer that in the state proceeding the defendant will be denied specific equal civil rights." *Simithis*, 849 F.2d at 773.

A case may not be removed under section 1443 when a petitioner "simply [alleges] that in practice [she] would be denied or be unable to enforce [her] rights" in state court. *Emigrant Sav. Bank v. Elan Mgmt. Corp.*, 668 F.2d 671, 674 (2d Cir. 1982). Rather, "removal w[ill] lie" only "when enforcement of the petitioner's rights in a state court was barred by a state statute or constitutional provision which was applicable in terms although unconstitutional on its face." *Id.* at 673. Hence, the petition must "refer[] to a [state] law of general application [indicating] that the defendant will be denied or cannot enforce the specified federal rights in state courts," or else "cit[e] to some 'formal expression of [such a] state law.'" *Simithis*, 849 F.2d at 773 (quoting *Georgia v. Rachel*, 384 U.S. 780, 800, 803 (1966)). Section 1443 "le[aves] to the state court" the protection of a defendant's federal civil rights, "except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court." *City of Greenwood v. Peacock*, 384 U.S. 808, 828 (1966).

Furthermore, section 1443 does "not [apply] to the whole gamut of constitutional rights." *New York v. Galamison*, 342 F.2d 255, 269 (2d Cir. 1965); *see also Robinson v. Eichler*, 795 F. Supp. 1253, 1258 (D. Conn. 1992) (Section 1443's "scope is very narrow."). Because the Supreme Court has construed the statutory phrase "'any law providing for the equal civil rights of citizens of the United States,' . . . 'to mean any law providing for specific civil rights stated in

6

terms of racial equality,'" *State Farm Mut. Auto. Ins. Co. v. Baasch*, 644 F.2d 94, 97 (2d Cir. 1981) (quoting *Rachel*, 384 U.S. at 791), section 1443 "appl[ies] only in cases where a defendant seeks to remove a state cause of action based upon alleged *racial* discrimination." *Robinson*, 795 F. Supp. at 1258 (emphasis added) (citing *Johnson v. Mississippi*, 421 U.S. 213, 219 (1975)). "[B]road contentions under the First Amendment and the Due Process Clause of the Fourteenth Amendment"—for example—"cannot support a valid claim for removal under [section] 1443, because the guarantees of those clauses are phrased in terms of general application available to all persons or citizens." *Rachel*, 384 U.S. at 792 (citing *Galamison*, 342 F.2d at 269, 271); *see Baasch*, 644 F.2d at 97 ("Seventh Amendment's guarantee of civil jury trial . . . does not come near to meeting the Supreme Court's limited criteria for invoking the civil rights removal statute."). "[C]onclusory . . . reference[s] to [civil] rights in [a] removal petition [are] woefully inadequate to support removal on the basis of [section] 1443." *Simithis*, 849 F.2d at 774.

In her petition for removal, Ms. Grohs suggests that the state court failed to accommodate her disability in violation of the Americans with Disabilities Act; committed various procedural irregularities in violation of state law; interfered with her "right to parent"; and violated her right to due process. *See* Pet. Removal, Doc. No. 1, at 4–10. None of those allegations states a viable claim that the proceedings "fac[ially] discriminate[d] in terms of race." *See Chesnut v. New York*, 370 F.2d 1, 4 (2d Cir. 1966); *see also, e.g.*, *Rachel*, 384 U.S. at 792 ("[B]road contentions under . . . the Due Process Clause of the Fourteenth Amendment cannot support a valid claim for removal under [section] 1443 . . . ."). Ms. Grohs does not even mention her race, nor does she suggest that the state court action—which is "merely a matrimonial dispute"—denied her "a specific right under a law in terms of racial equality." *See Pennsylvania ex rel. Gittman v. Gittman*, 451 F.2d 155, 156 (3d Cir. 1971) (per curiam) (citing *Dillard*, 404 F.2d at 405).

7

Because Ms. Grohs has not plausibly alleged that her race-based "civil rights were denied or could not be enforced in state court," she cannot remove the state court action to this court on the basis of section 1443. *See Simithis*, 849 F.2d at 774.

B. *Rooker-Feldman*

Even had removal been proper, Ms. Grohs' suit would be barred by the *Rooker-Feldman* doctrine. "Where a federal suit follows a state suit, the former may be prohibited by the so-called *Rooker-Feldman* doctrine in certain circumstances." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 83–84 (2d Cir. 2005). Named for two Supreme Court cases—*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)—the doctrine "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state court judgments." *See Hoblock*, 422 F.3d at 84. Because a federal statute, 28 U.S.C. § 1257, "vests authority to review a state court's judgment solely in th[e] [Supreme] Court," *Rooker* and *Feldman* held that district courts "lacked subject-matter jurisdiction" to hear cases seeking to "overturn an injurious state-court judgment." *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005).

For *Rooker-Feldman* to apply, two "substantive requirements" must be satisfied. *Hoblock*, 422 F.3d at 85. First, "the federal plaintiff must complain of injury from a state-court judgment." *Id.* Second, "the federal plaintiff must seek federal-court review and rejection of the state-court judgment." *Id.* In the absence of those criteria, *Rooker-Feldman* "does not deprive a district court of subject-matter jurisdiction 'simply because a party attempts to litigate in federal court a matter previous litigated in state court.'" *Id.* (quoting *Saudi Basic Indus. Corp.*, 544 U.S. at 293). Rather, the federal plaintiff must "complain[] of injuries *caused by* state-court judgments . . . and invit[e] district court review and rejection of those judgments." *Saudi Basic Indus. Corp.*,

8

544 U.S. at 284 (emphasis added). If a plaintiff raises "independent claims," even if those claims "involve the identical subject matter and parties as previous state-court suits," then the case is not barred by *Rooker-Feldman*. *Id.* at 293; *Hoblock*, 422 F.3d at 85.

In the present case, Ms. Grohs clearly "complain[s] of injury from a state-court judgment," *see Hoblock*, 422 F.3d at 85—she explicitly states that the "Superior Court violated state and federal laws and [her] and [her] children's rights" by "causing unlawful removal of [the] children [from] her care" and "den[ying] her access to court "*See* Pet. Removal, Doc. No. 1, at 14. She also overtly "seeks[] federal-court review and rejection of the state-court judgment," *see Hoblock*, 422 F.3d at 85, asking me to "issue a habeas to Mr. Grohs to return the children to the care of Ms. Grohs" and "take jurisdiction over the matter [from] . . . all Connecticut Superior Courts in the Family Division" because they "ha[ve] proven to be [] incompetent." *See* Pet. Removal, Doc. No. 1, at 17. Although Ms. Grohs conclusorily states that "*Rooker*[-]*Feldman* does not apply," *see id.* at 15, her petition—even "read liberally"—does not plausibly allege facts that would suggest her claims fall outside the *Rooker-Feldman* doctrine. *See Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009). Therefore, I conclude that I lack subject-matter jurisdiction over Ms. Grohs' case. *See Saudi Basic Indus. Corp.*, 544 U.S. at 292.

C. <u>Domestic Relations Exception</u>

Finally, even if removal had been proper and *Rooker-Feldman* did not apply, jurisdiction still would be lacking over this case due to the domestic relations exception to federal subject matter jurisdiction. "[T]he domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees," and rests on the longstanding view that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ankenbradt v. Richards*, 504 U.S.

9

689, 703–04 (1992) (quoting *In re Burrus*, 136 U.S. 586, 594 (1890)). Although the exception has been "narrow[ed]" in recent years, *see Williams v. Lambert*, 46 F.3d 1275, 1283 (2d Cir. 1995), federal courts continue to apply the doctrine to avoid "entangle[ment] . . . in traditional state-law questions that they have little expertise to resolve." *See Thompson v. Thompson*, 484 U.S. 174, 186 (1988). Simply put, "federal courts do not adjudicate cases involving the custody of minors and . . . rights of visitation." *Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967). "Even when a federal question is presented, federal courts decline to hear disputes which would deeply involve them in adjudicating domestic matters." *Thompson v. Thompson*, 798 F.2d 1547, 1558 (9th Cir. 1986) (citing *Hernstadt*, 373 F.2d at 318), *aff'd*, 484 U.S. 174.

In her prayer for relief, Ms. Grohs explicitly asks that I "issue a habeas to Mr. Grohs to return the children to the care of Ms. Grohs." *See* Pet. Removal, Doc. No. 1, at 17. That is precisely the sort of "child custody order[]" that I may not issue under the domestic relations exception. *See Ankenbradt*, 504 U.S. at 703; *see also Neustein v. Orbach*, 732 F. Supp. 333, 339 ("Federal courts do not adjudicate cases involving the custody of minors or right of visitation because that is the function of the States.") (brackets omitted). The other remedies sought by Ms. Grohs, though not running so explicitly afoul of the domestic relations exception, also would force me to "reexamine the Connecticut decree" and thereby "become[] embroiled in factual disputes concerning custody and visitation matters." *See Hernstadt*, 373 F.2d at 318; *Neustein*, 732 F. Supp. at 339; *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) ("[T]he domestic relations exception . . . 'applies generally to issues relating to the custody of minors,' as well as to 'civil rights actions directed at challenging the results of domestic relations proceedings.'") (quoting *Mitchell-Angel v. Cronin*, 101 F.3d 108, at *2 (2d Cir. 1996) (table)). Absent allegations that "do not involve domestic relations issues or [that] focus on . . . actions

independent and separate from the custody orders," *cf. McKnight v. Middleton*, 699 F. Supp. 2d 507, 519 (E.D.N.Y. 2010), I cannot exercise jurisdiction over a matter that would "ineluctably . . . draw[] [me] into a custody dispute." *See Neustein*, 732 F. Supp. at 340.

## IV. Conclusion

I agree with Mr. Grohs that removal was improper. *See Stark*, 171 F. Supp. 3d at 39. Although *pro se* pleadings must be "read liberally, and should not be dismissed without granting leave to amend at least once when a liberal reading . . . gives any indication that a valid claim might be stated," *Shomo*, 579 F.3d at 183, I conclude that repleading here would be "futile" and "should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Better pleading will not cure the substantive deficiencies of Ms. Grohs' petition. *See id.* Therefore, I grant Mr. Grohs' motion and order the case dismissed for lack of subject matter jurisdiction.

Ms. Grohs' attempt to remove the case was "plainly frivolous" and unreasonably delayed the state court proceedings. *Cf. Simithis*, 849 F.2d at 774. Bearing in mind that she is neither trained in the law nor represented by counsel, however, I elect not to impose sanctions. Thus, I will not require her to pay Mr. Grohs' fees incurred as a result of the removal.

The Clerk shall transfer the file to Connecticut Superior Court, Judicial District of Waterbury at Waterbury, and close the case.

So ordered.

Dated at Bridgeport, Connecticut, this 17th day of October 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge